Stanley SMOLAREK,
Plaintiff–Appellant,
(86–2074)

v.

CHRYSLER CORPORATION,
Defendant–Appellee.

Ralph FLEMING,
Plaintiff–Appellant, (87–1387)

v.

CHRYSLER CORPORATION, a Delaware Corporation; Louis Ebaldi and Lyndon Verlyndon, jointly and severally, Defendants–Appellees.

Nos. 86–2074, 87–1387.

United States Court of Appeals,
Sixth Circuit.

Argued April 7, 1988.

Decided Oct. 3, 1988.

Alan B. Posner (argued), Kelman, Loria, Downing, Schneider & Simpson, Detroit, Mich., for Smolarek.

Monica Farris Linkner, Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen and Bartnick, Detroit, Richard E. Shaw (argued) Detroit, Mich., for Fleming.

William T. McLellan, Chrysler Corp., Steven B. Hantler, Joseph C. Marshall, III, Robert W. Powell, Dickinson, Wright, Moon, Van Dusen & Freeman, Thomas Kienbaum (argued), Detroit, Mich., for defendants-appellees.

Before WELLFORD and NELSON, Circuit Judges; and PECK, Senior Circuit Judge.

PER CURIAM.

These combined cases present close and difficult questions regarding whether § 301 of the Labor Management Relations Act, 29 U.S.C. § 185, preempts plaintiffs' actions claiming violations of Michigan's Handicappers' Civil Rights Act, M.C.L. § 37.1101 *et seq.* (HCRA), and retaliatory discharge in violation of public policy relating to the filing of workers' compensation claims. In each case the district court found plaintiff's state cause of action preempted by § 301 and dismissed the suit for failure to exhaust remedies. The Supreme Court's recent decision in *Lingle v. Norge Division of Magic Chef, Inc.,* —— U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988), holding that an action under Illinois law for the tort of retaliatory discharge for filing a workers' compensation claim was not preempted by § 301, guides our decision in these cases.

SMOLAREK

Smolarek was employed by Chrysler from 1953 until his lay off in 1984, and was a member of the UAW.[1] Since an injury in 1955, Smolarek has suffered from a seizure disorder, which normally has been controlled by medications. In October 1984, he suffered a seizure at work and was absent from work for the following two weeks. When he returned to work, he was informed that no jobs consistent with the medical restrictions he had worked with since 1955 were available. In 1985 Smolarek again attempted to return to work and was told no work was available within his restrictions. Plaintiff alleges that at this time his foreman made the comment, "Stan, what if you fall down and other people in the plant see you and you are having a seizure. The other people could have a heart attack."

In April 1986, Smolarek filed a two count complaint in Michigan state court alleging discrimination under the HCRA and workers' compensation retaliation. He claimed that Chrysler discriminated against him by refusing to return him to his former position based on a handicap unrelated to his ability to perform his job duties, and that Chrysler also refused to reinstate him based on its fear that he might injure himself during a seizure on the job and file a workers' compensation claim. Smolarek did not allege any violation of the collective bargaining agreement between the UAW and Chrysler.

Chrysler removed the case to federal district court claiming federal question jurisdiction. Smolarek filed a motion to remand, which the district court denied on the grounds that § 301 preempted Smolarek's claims. The district court then dismissed Smolarek's action because he had failed to exhaust his intra-union remedies before filing a § 301 action. Smolarek now appeals the district court's denial of his motion to remand solely on the handicap discrimination issue.

FLEMING

Chrysler hired Fleming, also a UAW member, in 1976 as a painter-glazer. In August 1984, Fleming was injured while leaving the Chrysler plant where he worked, and as a result suffered some loss of balance, severe headaches, muscle spasms in his back, and vomiting. Fleming continued to work with some medical re-

---

**1.** The UAW has filed an amicus curiae brief in the *Smolarek* appeal arguing for reversal of the district court's judgment.

strictions on the types of tasks he could perform. Fleming claims that following his injury he was given job assignments inconsistent with his limitations. Fleming further contends that this "harassment" increased when he expressed his intent to file a workers' compensation claim. In October 1984, Fleming was laid off indefinitely. Chrysler claims his lay off was due to lack of work, as allowed by the collective bargaining agreement. Fleming claims that, while technically on lay off, he was told he was being dismissed.

In December 1984, Fleming grieved his lay off. This grievance was pursued to the third step of a four-step grievance procedure before Fleming voluntarily terminated his employment in May 1986 by relinquishing his recall rights as part of a settlement of his workers' compensation claim filed in February 1985.

Fleming filed a complaint in state court in July 1985, alleging violation of HCRA, discharge in retaliation for expressed intent to file a workers' compensation claim, breach of implied duty of good faith and fair dealing, and intentional interference with his quiet and peaceful pursuit of a lawful occupation. In August 1985, Chrysler removed the suit to federal district court. In October 1985, the district court denied Fleming's motion to remand on the grounds that the latter two counts of Fleming's complaint conferred original jurisdiction on the federal court.

Chrysler then filed a motion for summary judgment arguing that Fleming's claims were preempted by § 301. Finding that all of Fleming's claims were preempted, the district court granted the motion and dismissed the case, 659 F.Supp. 392. Fleming appeals this dismissal only with regard to the HCRA and retaliatory discharge claims.

*Removal and § 301 Preemption*

Ordinarily, the question of removability to federal court under 28 U.S.C. § 1441 turns upon application of the "well-pleaded complaint rule." Federal jurisdiction exists only when a plaintiff's properly pleaded complaint presents a federal question on its face. *Caterpillar, Inc. v. Williams,* — U.S. ——, 107 S.Ct. 2425, 2429, 96 L.Ed.2d 303 (1987). In the context of employment-related actions, however, a claim purportedly based solely on state law may be removable because § 301 of the LMRA has preempted that area of state law. In other words, "any claim purportedly based on that pre-empted state law is considered, from its inception, a federal claim, and therefore arises under federal law." *Id.* 107 S.Ct. at 2430. Thus, in the cases we now consider, the issues of federal preemption and removability largely merge; we must focus on whether plaintiffs' state-law claims are preempted by § 301 so as to place them within the scope of the "complete preemption" corollary to the well-pleaded complaint rule.

In a series of cases, the Supreme Court has made clear that § 301 of the LMRA preempts any state-law claim arising from a breach of a collective bargaining agreement. *See Allis–Chalmers Corp. v. Lueck,* 471 U.S. 202, 105 S.Ct. 1904, 85 L.Ed.2d 206 (1985); *Local 174, Teamsters, Chauffeurs, Warehousemen, & Helpers of America v. Lucas Flour Co.,* 369 U.S. 95, 82 S.Ct. 571, 7 L.Ed.2d 593 (1962); *Textile Workers Union of America v. Lincoln Mills of Alabama,* 353 U.S. 448, 77 S.Ct. 912, 1 L.Ed.2d 972 (1957); *see also Lingle v. Norge Division of Magic Chef, Inc.,* — U.S. ——, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988). The purpose of this rule is to require that all claims raising issues of labor contract interpretation be decided according to the precepts of federal labor law in order to prevent inconsistent interpretations of the substantive provisions of collective bargaining agreements. *Lucas Flour,* 369 U.S. at 103, 82 S.Ct. at 576.

Thus, *Lueck* faithfully applied the principle of § 301 preemption developed in *Lucas Flour:* if the resolution of a state-law claim depends upon the meaning of a collective-bargaining agreement, the application of state law (which might lead to inconsistent results since there could be as many state-law principles as there are States) is pre-empted and federal labor-law principles—necessarily uni-

form throughout the nation—must be employed to resolve the dispute. *Lingle*, 108 S.Ct. at 1881 (footnotes omitted).

In *Allis–Chalmers v. Lueck*, the Court expanded the preemptive reach of § 301 to state-law tort claims. In *Lueck* the Court considered whether a state-law cause of action for bad faith handling of an insurance claim was preempted because the insurance plan provisions were included in a collective bargaining agreement. The Court found the state claim was preempted because an essential element of the tort (*i.e.*, bad faith handling) required interpretation of the labor agreement regarding whether the plaintiff was due payments. Because the duty claimed to have been breached "derive[d] from the rights and obligations established by the contract," the Court reasoned that "any attempt to assess liability here inevitably will involve contract interpretation." *Id.* 471 U.S. at 217, 218, 105 S.Ct. at 1914.

Although the Court limited its holding in *Lueck* to the specific facts of that case and made clear that not "every state-law suit asserting a right that relates in some way to a provision in a collective-bargaining agreement ... necessarily is pre-empted by § 301," *id.* at 220, 105 S.Ct. at 1916, the Court did attempt to define the preemptive scope of § 301:

> Our analysis must focus, then, on whether the [state-law cause of action] confers non-negotiable state law rights on employers or employees independent of any right established by contract, or, instead, whether evaluation of the [state-law] claim is inextricably intertwined with consideration of the terms of the labor contract.

*Id.* at 213, 105 S.Ct. at 1912.

In its recent decision addressing asserted § 301 preemption of state-law claims, the Supreme Court has attempted to clarify its language in *Lueck* regarding what kind of "independence" of state-law actions from collective bargaining agreements permits a finding of non-preemption. In *Lingle v. Norge Division of Magic Chef, Inc.*, — U.S. —, 108 S.Ct. 1877, 100 L.Ed.2d 410

(1988), the Court held that a unionized employee's state-law action based on Illinois' tort of retaliatory discharge for filing a workers' compensation claim was not preempted by § 301 because "the state-law remedy ... is 'independent' of the collective-bargaining agreement in the sense of 'independent' that matters for § 301 preemption purposes: *resolution of the state-law claim does not require construing the collective-bargaining agreement.*" 108 S.Ct. at 1882 (emphasis added) (footnote omitted). In so concluding, the Court rejected the contentions of the employer that the retaliatory discharge action was not independent because · resolution of the state-law claim would· implicate the same factual analysis as would a grievance brought under the CBA's "just cause" provision. *Id.* Thus, *Lingle* stands as the Court's latest word on § 301's preemptive scope and, as such, will guide our decision in these cases.

### The Workers' Compensation/Retaliatory Discharge Claim

Fleming filed a state-law suit claiming that he was effectively discharged (technically, he was laid off) because of his expressed intention to file a workers' compensation claim. The district court found that Fleming's state-law claim was preempted by § 301, and Chrysler argues that this decision was correct because the retaliatory discharge claim is inextricably intertwined with the terms of the collective bargaining agreement.

Fleming's claim is essentially the same as the claim that the ·Court addressed in *Lingle*. In order for a plaintiff to show retaliatory discharge under Michigan law, he must demonstrate that he was discharged by his employer in retaliation for the filing of a lawful claim for workers' compensation. *See Sventko v. Kroger Co.*, ·69 Mich.App. 644, 245 N.W.2d 151, 154 (1976). As the Court reasoned in *Lingle*: "Each of these purely factual questions pertains to the conduct of the employee and the conduct and motivation of the employer. Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." 108 S.Ct. at 1882.

Consequently, here, as in *Lingle,* the state-law tort of retaliatory discharge creates rights independent of those established by the collective bargaining agreement and hence is not preempted by § 301. Accordingly, we conclude that the district court erred in finding § 301 preemption with regard to Fleming's retaliatory discharge claim.

*The Handicap Discrimination Claims*

Smolarek and Fleming make the following argument against preemption of their handicap discrimination (HCRA) claims: The rights created by HCRA are in addition to and independent of any rights created by the UAW–Chrysler collective bargaining agreement. They argue that these rights exist regardless of the terms of the collective bargaining agreement and apply equally to union and nonunion employees. Furthermore, they assert that the individual rights established by HCRA are the type of "nonnegotiable" rights that *Lueck* exempted from § 301 preemption and that cannot be bargained away by a collective bargaining unit. In summary, plaintiffs contend that success on the HCRA claim is not contingent on showing that any provision of the collective bargaining agreement was breached; therefore, the federal policy concern regarding interpretive uniformity is not implicated in these cases as set out in *Lingle.*

Chrysler counters these arguments by asserting that in these particular cases, evaluation of plaintiffs' HCRA claims will require consideration of collective bargaining agreement terms. The HCRA provisions applicable to Smolarek's and Fleming's claims require that an employer not "[d]ischarge or otherwise discriminate against an individual with respect to … the *terms, conditions, or privileges of employment,*" or "[l]imit, segregate, or classify an employee … in a way which deprives or tends to deprive an individual of employment opportunities or otherwise adversely affects the status of an employee because of a handicap that is unrelated to the individual's ability to perform the duties of a particular job or position." M.C.L. § 37.1202(1)(b), (c) (emphasis supplied).

Thus, Chrysler asserts that, in the case of a union employee, the HCRA itself requires reference to the "terms, conditions, and privileges of employment"—matters defined by the collective bargaining agreement. Finally, Chrysler argues that to allow union employees to pursue this type of HCRA claim could disrupt and/or bypass the collective bargaining process and grievance procedures.

The Supreme Court in *Lingle* approved, in dicta, the Seventh Circuit's recognition that "§ 301 does not preempt state anti-discrimination laws, even though a suit under these laws, like a suit alleging retaliatory discharge, requires a state court to determine whether just cause existed to justify the discharge." 108 S.Ct. at 1885 (quoting *Lingle v. Norge Division of Magic Chef, Inc.,* 823 F.2d 1031, 1046 n. 17 (7th Cir. 1987)). The Court went on to note that "the mere fact that a broad contractual protection against discriminatory—or retaliatory—discharge may provide a remedy for conduct that coincidentally violates state law does not make the existence or the contours of the state law violation dependent upon the terms of the private contract." *Id.* Chrysler, however, seeks to distinguish HCRA from other state anti-discrimination statutes in that HCRA expressly recognizes that some handicaps are related to job performance and does not purport to protect persons with those handicaps. *See Carr v. General Motors Corp.,* 425 Mich. 313, 389 N.W.2d 686, *amended by* 426 Mich. 1231, 393 N.W.2d 873 (1986).

(1) *Smolarek's HCRA Claim*

On appeal from the district court's order denying his motion for remand, Smolarek specifically argues that Chrysler violated its duties under HCRA by refusing to return him "to his former position or another position consistent with his medical restrictions and has maintained [him] instead on a disability lay off indefinitely." Chrysler responds that this state-law claim is "substantially dependent" on interpretation of the collective bargaining agreement's provisions regarding an employee's right to reinstatement following disability leave and characterizes Smolarek's claim as asserting

a breach of ¶ 53 of the collective bargaining agreement, entitled "Reinstatement after Disability."

Under HCRA, an employee has the initial burden of proving that the employer violated the Act. *Gloss v. General Motors Corp.*, 138 Mich.App. 281, 360 N.W.2d 596, 598 (1984). Smolarek might carry this burden by demonstrating that Chrysler had refused to reinstate him following his disability leave *because of* his seizure disorder. *See id.* The fact that the collective bargaining agreement contains a provision regarding reinstatement does not compel a finding of § 301 preemption. This is not a case in which the duty claimed to have been breached (*i.e.*, the duty not to discriminate) arises solely from the collective bargaining agreement. *Cf. International Brotherhood of Electrical Workers v. Hechler*, 481 U.S. 851, 107 S.Ct. 2161, 95 L.Ed.2d 791 (1987) (union's duty to provide safe workplace derived solely from collective bargaining agreement). Nor is this a case in which evaluation of Chrysler's prima facie liability will require determination of whether the collective bargaining agreement has been breached. *Cf. Lueck*, 471 U.S. 202, 105 S.Ct. 1904.

Chrysler may, in its own defense, assert that its treatment of Smolarek was allowed or required by the terms of the collective bargaining agreement and therefore was not based on Smolarek's handicap. The assertion of a defense requiring application of federal law, however, does not support removal to federal court:

It is true that when a defense to a state claim is based on the terms of a collective-bargaining agreement, the state court will have to interpret that agreement to decide whether the state claim survives. *But the presence of a federal question, even a § 301 question, in a defensive argument does not overcome the paramount policies embodied in the well-pleaded complaint rule* —that the plaintiff is the master of the complaint, that a federal question must

appear on the face of the complaint, and that the plaintiff may, by eschewing claims based on federal law, choose to have the cause heard in state court.

*Caterpillar*, 107 S.Ct. at 2433 (emphasis added).

We find that Smolarek's complaint pleaded a cause of action based solely on Michigan's HCRA, a statute that *Lingle* suggests has not been completely preempted by § 301. Accordingly, we conclude that the district court erred in denying Smolarek's motion for remand to state court. As the Supreme Court noted in *Caterpillar*, although the state court may need to determine whether § 301 preempts Smolarek's claim in light of Chrysler's defense based on the collective bargaining agreement, this court need not consider that issue.[2] *Id.* at 2433 n. 13. It is sufficient that we find that Smolarek's well-pleaded complaint did not arise under federal law or under the collective bargaining agreement.

### (2) *Fleming's HCRA Claim*

In contrast to Smolarek's appeal from an order denying remand, Fleming appeals directly from the district court's decision finding § 301 preemption of Fleming's HCRA and retaliatory discharge claims. Therefore, we must consider the preemption issue, whether raised in Fleming's complaint or by Chrysler's defenses.

■ Fleming asserted in his complaint that Chrysler violated HCRA by failing to provide him with work consistent with his medical restrictions and by effectually terminating him because of his handicap. To establish prima facie liability under the Act, he must demonstrate (1) that Chrysler took adverse employment actions against him and (2) that the actions were motivated by his handicap. As in *Lingle*, these are "purely factual questions" relating to the conduct and motivation of the employer. "Neither of the elements requires a court to interpret any term of a collective-bargaining agreement." 108 S.Ct. at 1882.

---

**2.** Our conclusion that Fleming's HCRA claim is not preempted by § 301, *infra,* however, suggests, but does not compel, the conclusion that a state court considering the issue in Smolarek's case might reach.

To defend against the HCRA charge, Chrysler must show that its actions were motivated by some factor other than Fleming's handicap. We recognize that Chrysler is likely to assert as its defense to Fleming's claim that it based its actions on the provisions of the labor agreement regarding reinstatement and accommodation. Even this defense, however, does not require a finding of preemption. In order to resolve the HCRA claim in light of this defense, a court need only decide whether Chrysler took actions adverse to Smolarek because of his handicap or solely because Chrysler felt bound by the union agreement to take the actions. It is *not* necessary to decide whether or not Chrysler's interpretation of the agreement is correct as a matter of federal labor law. The question is a factual one: What was Chrysler's motivation? Under *Lingle*, therefore, Fleming's HCRA claim is sufficiently "independent" of the collective bargaining agreement to escape § 301 preemption, for "resolution of the state-law claim does not *require* construing the collective-bargaining agreement." 108 S.Ct. at 1882 (emphasis added) (footnote omitted). Accordingly, we conclude under our understanding of *Lingle* that the district court erred in finding Fleming's HCRA claim preempted by § 301.[3]

In sum, we hold that because resolution of neither Fleming's retaliatory discharge claim nor his handicap discrimination claim would necessitate interpretation of a collective bargaining agreement, those claims are not preempted by § 301. The judgment of the district court in Fleming's case is accordingly REVERSED, and the matter REMANDED for further proceedings. We further find that because Smolarek's complaint asserted solely a violation of Michigan's HCRA and presented no question of federal law, removal to federal court was improper in this case, and the district court erred in denying Smolarek's motion to remand. The order of the district court denying remand is REVERSED, and the case is ordered REMANDED to Michigan state court.

---

3. This conclusion is not inconsistent with our decision in *Maynard v. Revere Copper Products, Inc.,* 773 F.2d 733 (6th Cir.1985). There we found that an employee's claim for damages against his union for breach of the union's duty of fair representation, brought pursuant to a provision of Michigan's HCRA, was preempted by § 301. The holding in *Maynard* was based on the fact that the HCRA fair representation provision "created no new rights for an employee and imposed no duty on a union not already clearly present under existing federal labor law." *Id.* at 735. Unlike the fair representation duty considered in *Maynard,* however, the duty not to discriminate based on handicap is not a duty already existing in the federal labor law. Therefore, the concerns regarding interpretative consistency that *Maynard* raised are not present in the instant appeal.